IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Bankruptcy No. 15-23089-JAD |
| LISA J. YANOVICH, | : | Chapter 7 |
| Debtor. | : | |
| | X | |
| JEFFREY J. SIKIRICA, CHAPTER 7 TRUSTEE, | : | |
| Movant, | : | Doc. # 26 |
| v. | : | |
| LISA J. YANOVICH, | : | |
| Respondent. | : | |
| | X | |

## MEMORANDUM OPINION

The matter before the Court is the Objection to Debtor's Exemptions (the "Objection") filed by Jeffrey J. Sikirica in his capacity as Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Lisa J. Yanovich. By the Objection, the Trustee challenges an exemption claimed by the debtor, Lisa J. Yanovich (the "Debtor"), with respect to her alleged primary residence located at 138 General Braddock Drive, Braddock, Pennsylvania 15104 (the "Braddock Property").[1]

Through the Objection, the Trustee avers that the Debtor's homestead exemption, claimed by the Debtor pursuant to 11 U.S.C. § 522(d)(1), is

---

[1] This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and 157(b)(2)(O). This Court also has the requisite subject-matter jurisdiction to determine this matter pursuant to 28 U.S.C. § 1334(b).

improper. According to the Trustee, the Debtor's claimed exemption is not proper because the Braddock Property was not the Debtor's primary residence at the time that she filed her bankruptcy petition.

Conversely, the Debtor contends that the exemption is indeed proper. As support for her position, the Debtor cites the uncontested fact that, as of the petition date, the Debtor intended to utilize the Braddock Property as her residence. As further support, the Debtor also points to uncontested facts that show that she was in the process of packing her things and had begun the initial steps of moving her belongings to the Braddock Property as of the commencement of this bankruptcy case. Thus, according to the Debtor, the Braddock Property was being "used as a residence" for purposes of 11 U.S.C. § 522(d)(1) and the exemption is proper.

Upon due consideration of both the record made in this case and the arguments of counsel, and for the reasons set forth more fully below, the Court concludes that the exemption taken by the Debtor in the Braddock Property is proper. Consequently, an order shall be entered that overrules the Trustee's objection.

I.

As an initial matter, the Court notes that the law provides that a claimed exemption is presumptively valid. See <u>Carter v. Anderson (In re Carter)</u>, 182 F.3d 1027, 1029 n.3 (9th Cir. 1999). The burden is therefore on the objecting party to show that the exemption should not be allowed. Fed. R. Bankr. P. 4003(c).

Where the objecting party, like the Trustee in this case, produces evidence to rebut the presumption, the burden of production then shifts to the debtor to demonstrate the propriety of the claimed exemption. See Walsh v. Hendrickson (In re Hendrickson), 274 B.R. 138, 149 (Bankr. W.D. Pa. 2002). It is through this lens that the Court analyzes the merits of the Objection lodged by the Trustee.

## II.

The record reflects that the Debtor commenced the instant bankruptcy case by filing a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code on August 27, 2015 (the "Petition Date"). The front page of her bankruptcy petition identifies the street address of the Debtor as being the Braddock Property. (See Doc. # 1 at p. 1).[2]

In connection with the Debtor's bankruptcy filing the Debtor also filed various schedules of assets and liabilities (collectively, the "Schedules" or singularly a "Schedule") as required by Fed. R. Bankr. P. 1007.

In particular, the Debtor filed Schedule A which sets forth the Debtor's interests in real property. (Id. at p. 8). One property identified in Schedule A was a house located at 610 East Pittsburgh McKeesport Boulevard, North Versailles, Pennsylvania 15137 (the "North Versailles Property"). (Id.). In her filing with the Court, the Debtor valued the North Versailles Property as being worth $40,000.00 and she further described the realty as constituting her "Former Primary Residence." (Id.).

---

[2] Unless otherwise noted, "Doc. #__" is the citation to a particular document filed at Case No. 15-23089-JAD.

-3-

The second piece of realty disclosed by the Debtor in Schedule A was her one-fourth interest in the Braddock Property. (Id.). Schedule A valued her interest as being worth $20,000.00 and further described the Braddock Property as constituting the Debtor's current "Primary Residence." (Id.).

As to the Braddock Property, in Schedule C the Debtor duly claimed an exemption pursuant to 11 U.S.C. § 522(d)(1) in the amount of $20,000.00. (Id. at p. 13). It is this exemption that the Trustee challenges.

The record also reflects that the Debtor previously filed a Chapter 13 case before this Court at Case No. 13-20052-JAD, which was dismissed on June 27, 2014. The petition in this prior case reflects that the Debtor listed the North Versailles Property as her address at that time.[3] After dismissal of the prior bankruptcy case, a mortgage foreclosure action was commenced concerning the North Versailles Property. In those proceedings, a default judgment in mortgage foreclosure was entered and the North Versailles Property was listed for Sheriff's Sale on September 8, 2015. (See Doc. #49, ¶¶14-18). Prior to the Sheriff's Sale taking place, the Debtor commenced the present Chapter 7 case.

Against this background, the Debtor in the current bankruptcy case filed a Statement of Intention acknowledging that the North Versailles Property was to be surrendered. The Statement of Intention further indicated that the Braddock Property was to be retained with an intention to avoid a lien against the property. (See Doc. #1 at p. 37).

---

[3] The Court takes judicial notice of the bankruptcy petition filed at Case No. 13-20052-JAD pursuant to Fed. R. Evid. 201.

Consistent with the Statement of Intention, the Debtor filed a Motion to Avoid Judicial Lien on September 11, 2015. Pursuant to this motion the Debtor asserted that the judicial lien of Capital One Bank USA impaired the Debtor's homestead exemption in the Braddock Property.[4] (See Doc. #13). After the Motion to Avoid Judicial Lien was set for hearing, the motion was duly served and no one objected to the relief requested. As a result, a default order was entered granting the motion and the judicial lien of Capital One Bank USA was avoided. (See Doc. #30).

The record also reflects that pursuant to 11 U.S.C. § 341, the Trustee convened the meeting of creditors (the "Meeting of Creditors") on September 28, 2015. The Trustee asserts that the Debtor testified at the Meeting of Creditors that she was living at the North Versailles Property – and not the Braddock Property – as of the commencement of this bankruptcy case. Given her testimony, the Trustee filed his Objection on October 6, 2015. It is in this Objection the Trustee argues that because "the Braddock Property was not the Debtor's primary residence at the time of the bankruptcy filing, the Debtor may not claim an exemption pursuant to 11 U.S.C. § 522(d)(1) in the Braddock Property." (See Doc. # 26, ¶6).

The Debtor filed a response (the "Response") to the Objection on November 12, 2015, averring that the Debtor was essentially confused at the Meeting of Creditors. Apparently, the Debtor had not yet changed the address

---

[4] See Veryl Victoria Miles, A Debtor's Right to Avoid Liens Against Exempt Property Under Section 522 of the Bankruptcy Code: Meaningless or Meaningful?, 65 Am. Bankr. L.J. 117 (1991) for a general description as to how lien avoidance works in the context of 11 U.S.C. § 522.

-5-

identified in her driver's license—which was the North Versailles Property address. When presented with the license the Trustee asked the Debtor if the address on the license was her residence. The Debtor then answered "yes" to this question thereby spawning the Trustee's Objection. At the hearing on the Objection, counsel for the Debtor represented that the Debtor "incorrectly answered yes . . . [because she] misunderstood the context of the question and answered yes because her present mailing address was her former residence," i.e., the North Versailles Property. (See Doc. # 49, ¶27). Through the Response to the Objection, the Debtor also asserts that as of the commencement of the case she was "in the process of relocating all of her personal belongings from her former residence, the North Versailles [P]roperty to her residence the Braddock [P]roperty." (Id. at p. 6, ¶13). She also corroborated this assertion by attaching to her Response pictures of moving boxes and a proof of rental payments to a storage rental facility. (Id., Exhibit A; Exhibit B). She further averred that at all relevant time periods germane to this case that she intended to reside in the Braddock Property on a permanent basis.

At the hearing held on the Objection, the Trustee indicated that he did not dispute the Debtor's rendition of the facts. Nonetheless, the Trustee argued that the Debtor had not relocated from the North Versailles Property to the Braddock Property as of the Petition Date. As such, the Trustee argued that the Debtor's claim of a homestead exemption in the Braddock Property is improper. (See Audio Recording of Hearing Held in Courtroom D, November 17, 2015 (10:29 AM)).

Counsel for the Debtor argued at the hearing that "at the time of filing [the Debtor] was in the process of relocating all of her personal belongings" to the Braddock Property. Counsel also acknowledged that, as of the Petition Date, his client was physically located at North Versailles Property, although she intended to move to the Braddock Property. (Id. at 10:31 AM). Counsel thus argued that these uncontested facts were sufficient enough for the Debtor to claim the homestead exemption in the Braddock Property.

### III.

Whether the Debtor has sufficiently met her burden of production in this case turns upon the application of the language of 11 U.S.C. § 522(d)(1) to the uncontested facts as presented by the Debtor.

Pursuant to 11 U.S.C. § 522(d)(1), the following property may be exempted from the trustee's liquidation efforts:

> The debtor's aggregate interest, not to exceed $22,975 in value, in real property or personal property that the debtor or a dependent of the debtor **uses as a residence**....

11 U.S.C. § 522(d)(1)(emphasis added).

Courts have used varying approaches to interpret this residency exemption statute. As explained by the court in In re Stoner, 487 B.R. 410, 415 (Bankr. D. N.J. 2013), the "majority of the courts addressing the parameters of a 'residence' for purposes of 11 U.S.C. §522(d)(1) suggest that '[w]hether real property constitutes a 'residence' is dependent upon the facts presented.'" However, as noted in Stoner, the meaning of "residence" and the appropriate analysis to determine it varies among courts. Id.

Some courts have interpreted the phrase "uses as a residence" in Section 522(d)(1) as requiring actual occupancy of the premises as of the petition date as a precondition to the debtor claiming a homestead exemption under the Federal statute. See e.g., In re Gandy, 327 B.R. 807, 809 (Bankr. S.D. Tex. 2005) (Section 522(d)(1)'s "plain language unambiguously requires actual occupancy at a point prior to the bankruptcy filing")(citing In re Lusiak, 247 B.R. 699, 702 (Bankr. N.D. Ohio 2000) (noting the language of § 522(d)(1) appears, at a minimum, to "[denote] occupancy of the premises by the debtor as a principal place of dwelling."); In re Healy, 100 B.R. 443 (Bankr. W.D. Wis. 1989)("occupancy requirement is the *sine qua non* of the homestead exemption")).

Thus, according to one court, "under the plain language of the statute, the phrase 'uses as a residence' indicates a present use or occupancy as opposed to a future intent to occupy." Gandy, 327 B.R. at 809.

In more recent cases using a plain language approach, a more broad interpretation of the phrase "uses as a residence" has been utilized. See e.g., In re Lawrence, 469 B.R. 140 (Bankr. D. Mass. 2012)(property previously used as vacation home could be exempted because the exemption is not limited to "principal" residence); In re Demeter, 478 B.R. 281 (Bankr. E.D. Mich. 2012)(debtor may claim residence exemption in either of two homes where each home was used by the debtor regularly).

Still other courts, finding ambiguity in the statute, have looked to the legislative history of 11 U.S.C. §522(d)(1) for guidance. See e.g., Stoner, 487 B.R. at 419 (in light of ambiguity, legislative history consulted for guidance).[5]

Upon reviewing the legislative history, the court in Stoner concluded that the legislative history of §522(d)(1) buttressed the holding that the residency exemption under the Bankruptcy Code extended "only to real estate which a debtor truly intends to use as his [or her] homestead." Id.; but see In re Demeter, 478 B.R. at 289 (disagreeing with cases limiting residence to "homestead" under state law). In this regard, the Stoner court was guided by substantive state law and the debtor's intent was considered as being determinative as to whether the property at issue was one that the debtor uses as a residence. Stoner, 487 B.R. at 421.

Other courts look to state law for a comparison of what a residence is as compared to what constitutes a homestead under non-bankruptcy law. See Stoner, 487 B.R. at 416; see also e.g., Makaroff v. Buick (In re Buick), 237 B.R. 607 (Bankr. W.D. Pa. 1999)(because the term "residence" is undefined in the statute, it is to be examined in light of state homestead exemptions).

In yet another approach to determining a debtor's eligibility for the homestead exemption in bankruptcy, the District Court of Rhode Island examined the "totality of the circumstances" and looked to the exemption's goal

---

[5] Ambiguity, in the context of statutory construction and interpretation, means "more than one principled meaning [of a word or phrase in a statute] is permissible." The Honorable Thomas F. Waldron & Neil M. Berman, Principled Principles of Statutory Interpretation: A Judicial Perspective After Two Years of BAPCPA, 81 Am. Bankr. L.J. 195, 229 (2007).

of protecting a debtor's family home. See In re DeMasi, 227 B.R. 586 (D. R.I. 1998).

In DeMasi, the District Court of Rhode Island noted that "[u]nder federal law, residence should be flexibly defined," finding that although "[g]enerally, a residence will refer to a home that a debtor owns and occupies at the time of filing, . . . the determining factor should not be so mechanical as to require a debtor to occupy the home on the filing date or use the address on the bankruptcy filing." DeMasi, 227 B.R. at 588.

### IV.

What is clear by all of these cases is that courts have used various tests and have reached divergent results when examining whether a debtor could exempt specific property as being "used as residence."

For example, the requirement for physical occupancy as of the petition date as a precondition to a debtor's claim to a homestead exemption has been supported by the general principal that exemptions are determined as of the petition date. See e.g., In re Wengerd, 453 B.R. 243, 250 (B.A.P. 6th Cir. 2011); In re Hamacher, 535 B.R. 180, 182 (Bankr. E.D. Mich. 2015); Buick, 237 B.R. at 609.

As one court observed: "The facts of the case and the law, as they exist on the date of the filing of the petition, determine any exemptions claimed." Ford v. Konnoff (In re Konnoff), 356 B.R. 201, 204 (B.A.P. 9th Cir. 2006) (citing Zibman v. Tow (In re Zibman), 268 F.3d 298, 304 (5th Cir.2001); In re Combs, 166 B.R. 417, 419 (Bankr. N.D. Cal.1994)).

However, as noted above, some courts have looked to the totality of the circumstances, which includes the intent of the debtor as of the petition date, to determine whether a debtor can exempt property not actually occupied at the time of the filing of a bankruptcy case.

For example, the court in In re Grindal, noting the purpose of the homestead exemption as securing a way for the debtor to support himself and his family and to augment the fresh start in bankruptcy, recognized that "a finding that the debtors *actually* occupied the homestead on the filing date is neither necessary nor sufficient to qualify for the exemption." In re Grindal, 30 B.R. 651, 653 (Bankr. D. Me. 1983).

Looking to COLLIER ON BANKRUPTCY, the Grindal court recognized that "[o]ccupancy may be constructive as well as actual" in order to constitute a sufficient use as a residence. Id. (citing 3 COLLIER ON BANKRUPTCY ¶ 522.10 (15th ed. 1982)). According to the court in Grindal, the "primary factor is the debtor's intention on the filing date." Id. at 653.

However, a debtor's intent to occupy at some future date, in and of itself, is not necessarily sufficient to meet the "totality of the circumstances" test as set forth in DeMasi. See In re Corse, 486 B.R. 241, 249 (Bankr. D. R.I. (2013), *aff'd on other grounds*, C.A. No. 13-282S, 2014 WL 652268 (D. R.I. Feb. 19, 2014).

There must be some "positive indication of an intent to occupy the premises; an undefined floating intention is inadequate." In re Feliciano, 487 B.R. 47, 51 (Bankr. D. Mass. 2013) (quoting In re Lozada Rivera, 470 B.R. 109,

-11-

117 (Bankr. D. Puerto Rico 2012)); see also Lusiak, 247 B.R. at 703 (describing constructive occupancy for purposes of section 522(d)(1) as "physical absence from a premises coupled with an intent to return to the premises at some point in the future").

In a situation where a debtor has been absent from the property claimed as exempt, some courts have held that bare allegations of an intention to occupy the premises without the production of corroborating evidence is insufficient to support the claimed exemption. Feliciano, 487 B.R. at 52.

In this regard it has been stated that in addition to a self-serving statement of intent, the debtor must also demonstrate "a meaningful ability to occupy the property imminently or within a reasonable time." In re Bennett, 192 B.R. 584, 588 (Bankr. D. Me. 1996).

### V.

In examining the facts of this case in light of the varying body of case-law described above, this Court concludes that the "totality of the circumstances" support the Debtor's claimed homestead exemption.

The United States Court of Appeals for the Third Circuit has observed that "the historical purpose of exemption laws has been to protect a debtor from [her] creditors, to provide [her] with the basic necessities of life so that even if [her] creditors levy on all of [her] nonexempt property, the debtor will not be left destitute and a public charge." In re Krebs, 527 F.3d 82, 85 (3d Cir. 2008)(quoting H.R. Rep. No. 95-595, at 126 (1977)).

Thus, the purpose of the homestead exemption is, in keeping with the goal of a fresh start for the honest but unfortunate debtor, to implement the long-standing tradition of protecting a debtor's home. See Lusiak, 247 B.R. at 702.

In order to ensure that the goals of the bankruptcy laws are not unnecessarily left unmet, the Court concludes that the fact that the Debtor was not having overnight stays at the Braddock Property as of the petition date is not a *per se* bar to the Debtor's claimed homestead exemption. Rather, it is appropriate for the Court to examine further into the totality of the circumstances to determine whether the Debtor should be deemed to have been "using" the Braddock Property as a "residence" as of the time she commenced her instant bankruptcy case.

**VI.**

The undisputed record clearly shows the intent of the Debtor to use the Braddock Property as her residence as of the petition date. Support for this conclusion is the fact that as of the petition date the Debtor was in the midst of packing her belongings from what was to be her former residence, the North Versailles Property, in order to complete the move to the Braddock Property. Her intent to utilize the Braddock Property as her residence was further manifested by the fact that she identified this property as her residence in her filings with this Court on the petition date. Namely, she identified the Braddock Property has her residence on the face of the petition; she identified the Braddock Property as her residence in Schedule A; and she identified her

intention to retain the Braddock Property as her residence (and stated that she will surrender the North Versailles Property to the secured creditor) in her Statement of Intention.

Her further filings with the Court reflect an intent to immediately complete her efforts at residing at the Braddock Property as she filed a motion to avoid the judicial lien as impairing her exemption with respect to this residence, and she did not oppose the efforts of the mortgagee to obtain relief from stay as to her prior abode-- that is, the North Versailles Property.

Of course, as of the petition date the Debtor owned a one-fourth interest in the Braddock Property and a proper inference flowing from this fact is that she had the access and control of the property in order to move into it. These facts are germane because the definition of the word "use" includes not only the "privilege or benefit of using something" but also the "ability or power to use something." See Webster's New Collegiate Dictionary at p. 1288 (G & C. Merriam Co. 1975).

Given the fact that it is undeniable that the Debtor intended to reside at the Braddock Property, and that it is beyond dispute that the Debtor was taking overt and good faith steps to relocate to the residence as of the petition date, the Court is comfortable with concluding that the Debtor should be deemed to have been "using" the Braddock Property as a "residence" for purposes of allowing a homestead exemption pursuant to 11 U.S.C. § 522(d)(1).

The Court's conclusion is particularly acute when one considers the practical realities most debtors face. That is, as consumer debtors are sliding

into bankruptcy, they oftentimes find their personal and financial lives are full of stress because their lives are either in a state of uncertainty, flux, change, or turmoil. This case involving Ms. Yanovich is no different.

The Court has no doubt Ms. Yanovich has had some upheaval in her circumstances as she was finding herself at the doorsteps of the Bankruptcy Court. The undisputed record is that the North Versailles Property was well into the mortgage foreclosure process and a sheriff's sale was pending when she filed her bankruptcy case. In her Response to the Objection to Debtor's Exemption, the Debtor even stated that the current bankruptcy was filed shortly before the scheduled sheriff's sale so that she would have additional time to remove her belongings.

Why under these circumstances should the Debtor be deprived of a homestead exemption when the *bona fides* of her actions and intentions are not in dispute? It appears under these unique circumstances that the Debtor should be, and shall be, permitted to claim the exemption in the Braddock Property.

### VII.

In rendering its decision today, the Court is mindful of the cases invoking the equitable doctrine(s) of "constructive occupancy" or "constructive possession" to find that an absentee debtor has been "using" property as a "residence" for purposes of 11 U.S.C. § 522(d)(1). See e.g., Buick 237 B.R. 607 (Bankr. W.D. Pa. 1999).

The cases examining the validity of a homestead exemption claimed by a debtor while being physically absent from the property typically address a situation where the debtor had at one time occupied the premises, but had vacated the property at issue prior to the filing of the bankruptcy. The issue then surrounds the debtor's return to the property in connection with the bankruptcy case, and whether the debtor could exempt the same.

Since the Debtor in the matter *sub judice* has never previously lived at the Braddock Property, the facts of this case do not fit squarely within the parameters of those cases analyzing an exemption objection in the context of constructive occupancy. Nevertheless, in this instance, the Court finds that to be a distinction without a difference.

Here, the facts and circumstances of this case sufficiently present a situation where the intent and circumstances warrant the allowance of the exemption. In those cases in which courts examined whether a debtor would be returning to the premises, what was being examined was, in effect, the intention and ability of the debtor to occupy the property as a residence after the absence of the debtor from the property. Whether the debtor is not residing in the property as a result of not yet returning or whether it is because the debtor has not yet completed the move to the premises should not be determinative. In either instance, the debtor at the time of the filing is not presently occupying the property or having overnight stays with respect to same. What is of significance is whether the debtor actually intends to use the exempted property as a residence as the debtor gets on with his or her life.

Along these lines, the court in <u>Lusiak</u> noted that:

> actual physical occupancy of a dwelling house is not an absolute necessity to a finding that a debtor actually occupies a house for purposes of the residency requirement of §522(d)(1) ... if actual physical occupancy were an absolute condition precedent to the residency requirement of §522(d)(1), then even a temporary absence ... would defeat a debtor's entitlement to claim an exemption in that house, a result clearly in contradiction to the purpose of the exemption statute.

<u>Lusiak</u>, 247 B.R. at 702-03; <u>see also</u> <u>Bennett</u>, 192 B.R. at 588 (not ruling out possibility that there may exist a case in which comparable state statutory exemption could be sustained in a property never previously occupied by the debtor).

In those cases where the debtor's exemption hinged on the debtor's return to a particular property, the courts looked to the facts and circumstances of each case and the intent of the debtor. In those instances where the objection to exemption was sustained, the facts led to the conclusion that the debtor, once absent, had no valid or *bona fide* intent to return.

For example, in <u>Feliciano</u>, the homestead exemption was denied because the circumstances were that the debtors had been absent from the property for many years, made no concrete plans to return, the property was unfinished and potentially uninhabitable, and the property was listed for sale. <u>Feliciano</u>, 487 B.R. at 50-52.

In <u>In re Abraham and Asgharnejad</u>, Case No. 12-39700, 2014 WL 3377370 (Bankr. D. N.J. July 10, 2014), the homestead exemption was denied when the Debtors moved to Iran prior to filing and showed no serious effort to

-17-

find employment in or return to the United States. In addition, although they owned the property at issue, their children paid for and maintained the property. Id. at *2.

In Stoner, the court was also not convinced that the debtor intended to utilize the premises as his residence because the debtor listed in his documents an address different than the one he was exempting and made no effort to change the listed address of record in his bankruptcy until two years after filing; nor did he change his address elsewhere (such as on his driver's license). Stoner, 487 B.R. at 422.

In a case in which a debtor had never previously lived in an exempted property, the court considered the possibility that such an exemption could be valid, but sustained the objection to exemption based on the unique facts of the case. In re Bennett, 192 B.R. 584 (Bankr. D. Me. 1996). In Bennett, those facts were that the debtors were unable to show that they could occupy the property within a reasonable time since it was largely unimproved. The instant case before the Court, however, is demonstrably different than what was presented in Bennett. The undisputed facts are that Ms. Yanovich has shown that she can occupy the Braddock Property, and that she was making the necessary arrangements to do so as of the petition date.

As stated in DeMasi, "the determining factor should not be so mechanical as to require a debtor to occupy the home on the filing date." DeMasi, 227 B.R. at 588. This approach is in keeping with the notion that an exemption statute is to be liberally construed for the benefit of the debtor and

-18-

to implement the statute's purposes. Menninger v. Schramm (In re Schramm), 431 B.R. 397, 400 (B.A.P. 6th Cir. 2010).

While the Court recognizes, as noted in Feliciano, 487 B.R. at 51, that "the federal statute contains no mention of intent, thereby creating a fairly high hurdle for the debtors to overcome in order to prevail on their argument that their intention ... satisfies the federal statute," the Court finds that in this instance, the hurdle has been overcome by this Debtor.

### VIII.

For the reasons expressed above, the Court finds that the Objection to Debtor's Exemptions should be overruled. An appropriate order shall be entered.

Dated: February 1, 2016          _/s/ Jeffery A. Deller_
                                 JEFFERY A. DELLER
                                 Chief U.S. Bankruptcy Judge

Case Administrator to serve:

Bryan P. Keenan, Esq., Counsel to the Debtor
Jeffrey J. Sikirica, Esq., Chapter 7 Trustee
Office of the U.S. Trustee                    FILED
                                              2/1/16 4:46 pm
                                              CLERK
                                              U.S. BANKRUPTCY
                                              COURT - PGH